JOHN KING v. ATLANTIC & GREAT WESTERN R. R. CO. ET AL.

1. AFTER ACQUIRED PROPERTY—SPECIFIC DESCRIPTION EXCLUDING.

A railroad mortgage conveying "all of the following, present and in the future to be acquired property and estate of said company" does not convey present and after-acquired property generally where such description is followed by specific reference to the property conveyed.

2. RULE APPLIED.

A railroad mortgage conveying "all of the following, present and in the future to be acquired property and estate of said company, that is to say," their roadway between certain points, and then "including the right of way and lands occupied together with superstructures and tracks thereon, or to be thereon, and all iron rails, ties used thereon, procured or to be procured therefor, and all bridges, viaducts, culverts, fences, depot grounds and buildings thereon, and all the appurtenances belonging thereto, engines, tenders, cars, tools, machinery, materials, contracts, subscriptions of stock, and all other personal property, rights thereto and interests therein, whether choses in action or in possession, and all franchises, rights and privileges of the said Atlantic and Great Western Railway Company," does not include depot grounds of another railroad subsequently leased and eventually consolidated with the company giving the mortgage.

**3. CONVEYANCE COVERING AFTER ACQUIRED TITLE ONLY.**

A railway mortgage conveying "all the right, title and interest which the said company now has or may hereafter acquire in and to its aforesaid railroad," specifies nothing and does not convey after acquired property, but only after acquired title to the railroad.

**4. REORGANIZATION—EFFECT—INCOME MORTGAGE.**

A reorganization of a railroad company is the surrender of the charter of the old company and the issuance of a charter to the reorganized company, and the old company ceases to exist save as to the winding up of its affairs, and has no longer any corporate existence out of which it may earn an income. Hence, where a railroad company was included in a reorganized company, a purchase by the latter cannot be said to have been purchased with the tolls, revenues or income of the defunct road, or as such subject to the conditions of an income mortgage executed prior to the acquirement of the property.

**5. WHETHER INCOME MORTGAGE WILL FOLLOW AFTER ACQUIRED PROPERTY.**

Whether mortgage will follow and include a lot purchased with the tolls and income of a railroad company subsequent to the execution of an income mortgage, where all the property covered by the mortgage is entirely insufficient to pay off and discharge the indebtedness specified in it, *quære?*

**6. PRIORITY OF LIEN UNDER SEC. 3398, REV. STAT.**

Under Sec. 3398, Rev. Stat., prescribing the priority of liens against railroad companies reorganized under Sec. 3393, Rev. Stat. *et seq.*, whatever mortgage or deed of trust may be made by the reorganized company is made subject to the rights of parties who recover damages for injuries thereafter suffered or sustained by the misconduct of its agents; and for such damages a party shall have a lien upon the road superior to any mortgage or deed of trust.

**7. LIENHOLDER NOT AFFECTED BY FORECLOSURE.**

Where a lien grew out of injuries sustained by reason of misconduct of the agents and servants of a reorganized railroad company, and being superior under Sec. 3393, Rev. Stat., to that of a reorganization mortgage, the lienholder is not affected by foreclosure of such mortgage, unless he is made a party thereto.

**8. RAILROADS MUST BE SOLD IN ENTIRETY—CONTRA DEPOT GROUNDS.**

The state and the public have such an interest in the existence and operation of railroads as to require them to be sold in entirety, upon judicial sales, and not in sections, Therefore, when a party acquires a lien upon a particular part of a continuous line of road he cannot subtract that particular part and sell it, so that the road will be divided by a strip out of it, but where the property subject to lien is independent, as where a lot was purchased abutting a leased railroad, upon which to build a depot, and it could be sold without interfering with the operation of the road continuously throughout its whole length, and it not being part of the leased property, it does not come within the rule stated and accordingly may be sold separately.

APPEAL.

LAUBIE, J.

The case of John King against the Atlantic & Great Western Railroad Company and others, is a case that is brought into this court by appeal and was tried before the court at the former term and held by the court under advisement.

The action upon the part of King is brought for the purpose of determining the priority of liens upon and to sell lot No. 369 in this city (Youngstown) upon which there is a passenger station house connected with the Cleveland and Mahoning Railroad, alleging that he had obtained a lien upon this lot by virtue of a judgment recovered in the common pleas court in this county against the Atlantic & Great Western Railroad Company, at the October term, 1874, and that certain executions thereafter were levied under that judgment upon this property.

King v. Railroad Co.

This case was commenced in February following, and remained in the court of common pleas until 1879, when the decree was rendered. Before that was done, however, an amended petition was filed and the New York, Pennsylvania & Ohio Railroad Company was made a party defendant, and it came in and answered, and under that answer arises the issues that are to be determined in this case.

The New York, Pennsylvania & Ohio Railroad Company claims to be the owner of the lot in question, with the buildings thereon, free from the claim of the plaintiff, by virtue of a certain proceeding of the common pleas court of Summit county in a case wherein Taylor and Dunphrey were plaintiffs and the Atlantic & Great Western Railway Company and others were defendants, brought for the purpose of foreclosing the mortgages upon that road. The New York, Pennsylvania & Ohio Railroad Company claims that title from the purchaser at the judicial sale made in that case.

In order to determine the question at issue whether or not the plaintiff still has a lien upon the premises in question, or whether the New York, Pennsylvania & Ohio Railroad Company took the property freed from that lien by virtue of the proceedings of foreclosure and sale, in that case referred to, it is necessary to examine the titles of this corporation, The Atlantic & Great Western Railroad Company, to the premises in question. From the best consideration that we can give the documents submitted, we find the facts to be substantially as follows: Before 1858, The Atlantic & Great Western Railroad Company of Ohio was incorporated for the purpose of constructing a road from Dayton, in the state of Ohio, through various counties, to a point in the county of Trumbull, on the state line between the states of Ohio and Pennsylvania; and in October, perhaps, of that year, it executed a mortgage upon its road, partly completed, and upon certain properties connected with it to Flag and Stedman as trustees for certain bondholders, and subsequently, in May, 1863, there was executed to these trustees, or rather to Stedman and Schraust, who succeeded Flag, a mortgage deed of further assurance, but which for convenience will be spoken of as the Flag and Stedman mortgage. There was then existing also the Atlantic & Great Western Railroad Company of Pennsylvania, organized to construct a line of road from the point where the Ohio corporation struck the Pennsylvania line, to a point on the line between the states of New York and Pennsylvania, and the Atlantic & Great Western Railroad Company of the state of New York, which was organized to construct a line of road from the point referred to on the state line between New York and Pennsylvania to the town of Salamanca, in the said state of New York. Thus the three corporations would own, when constructed, a continuous line of railroad from Salamanca in the said state of New York to Dayton in the said state of Ohio. These railroad companies were independent corporations.

In 1863, the Cleveland and Mahoning Railroad Company executed a lease of road to these three railroad companies, the Atlantic and Great Western Railroad Company of Ohio, the Atlantic and Great Western Railroad Company of Pennsylvania, and the Atlantic and Great Western Railroad Company of New York, for ninety-nine years, and subject to conditions and limitations contained in the lease. The line of road of the Atlantic and Great Western Railroad Company ran from a point, as I have said, in Trumbull county on the state line, in a southwesterly direction to the city of Dayton. The line leased to these companies, the

line of the Cleveland and Mahoning Railroad, ran from the city of Youngstown, in a northwesterly direction to the city of Cleveland, crossing the Atlantic and Great Western Railroad at Leavittsburgh; and this was the line of road that was mentioned in that lease.

In August, 1865, there was a consolidation of these three corporations into one corporation, the Atlantic and Great Western Railway Company. This was done under and by virtue of the laws of the various states.

Subsequently, in 1865, there was a supplemental lease made by the Cleveland and Mahoning Railroad Company to this consolidated company, the Atlantic and Great Western Railway Company, of the line of that road subject to the limitations and conditions expressed in the lease.

In 1865, in October, the consolidated company, the Atlantic and Great Western Railway Company executed a mortgage to one John R. Penn, trustee, to secure a certain amount of bonds aggregating perhaps the sum of thirty million dollars, and this mortgage was upon the road of this company extending through these three states and upon its leased line.

In 1869, Penn commenced an action to foreclose this mortgage in Ohio, in the court of common pleas of Summit county, and also in the courts of the other two states. He made in that action the trustees in the mortgage, Flag and Stedman, parties thereto defendant, who set up their mortgage. In the decree in that case it was provided that the road might be sold subject to the Flag and Stedman mortgage, and it was so sold, and the sale was made of the road and its property, subject to the lien of the Flag and Stedman mortgage. This sale was in July, 1871, and was made to Geo. McClelland, Allen G. Thurman and William Butler Duncan, trustees, by Reuben Hitchcock, master commissioner, and the deed was made by Hitchcock to these parties for the premises sold, followed by similar proceedings in the other states. These parties made a deed subsequently to the Atlantic and Great Western Railroad Company, the purchaser, by virtue of an arrangement between the creditors of the Atlantic and Great Western Railway Company, under a scheme of reorganization of that company. After this sale there was a second consolidation effected between the Atlantic and Great Western Railroad Company of Ohio, the Atlantic and Great Western Railroad Company of Pennsylvania and the Atlantic and Great Western Railroad Company of New York, treating these companies as still existing, and to that company the conveyance was made of the property purchased under the order of sale in the Penn foreclosure proceedings and thereupon that company executed a mortgage to Taylor and Dunphrey, trustees, to secure a large amount of bonds issued and to be issued by that company.

On December 8, 1874, Taylor and Dunphrey commenced a proceeding in court of common pleas of Summit County, Ohio, to foreclose that mortgage. The trustees in the mortgage were made parties as well as a great number of others. A receiver was appointed on December 9, 1874, who took possession of all the property and the leased lines of the company—of the railroad extending from Salamanca, New York, to Dayton, in the state of Ohio, and all of the leased lines of that company; and this was done in pursuance of the order of the court in the state of Ohio, and in the other two states by supplemental proceedings. In that case a decree was rendered in July, 1879, and a sale was had. In

January, 1880, up to which time the road and its leased lines had been in the hands of the receiver, this sale was confirmed, and in the following month, February, in the other states, and the sale was confirmed and deed made to the purchasers, Ralston and Streng, who purchased as trustees under another scheme of reorganization.

These trustees conveyed to H. B. Paine and four others on March 16, 1880, in trust and for the purpose of enabling them to form a corporation, and they filed a certificate of incoporation on March 16, 1880; on the same day, March 16, 1880, Ralston and Streng made a deed to the New York, Pennsylvania and Ohio Railroad Company, the organized company.

How it is possible they should make a deed to two parties of this same property and on the same day we don't know, and what became of the title to Payne, and these other incorporators, we don't know; perhaps it is immateriai. The assumption is that the New York, Pennsylvania & Ohio Railroad Company owns and·has title to all the property, including the leasehold interests that were acquired by the Atlantic and Great Western Railroad Company, and held by it at the time of the sale.

In November, 1872, Warren Packard and wife deeded this lot, 359, to the Atlantic and Great Western Railway Company, in fee, that company having bought and paid for it. It proceeded to build upon this lot what is termed in this case, the new passenger depot of the Cleveland and Mahoning Railroad and this adjoins the right of way of the Cleveland and Mahoning Railroad at a point in the city of Youngstown.

The judgment, as I have said, of the plaintiff, against the Atlantic and Great Western Railroad Company, was rendered at the October term, 1874, after title had been acquired by that company of lot 359; and that judgment was a lien therefor upon that property from the first day of that term, to-wit, October 19, 1874. Execution was issued upon the judgment December 10, 1874, and levied on the same day on this property, and this suit to enforce the judgment lien commenced in October, 1875, during the life of the lien of that judgment, and therefore the lien of the judgment has never been lost, as this proceeding has been continuously in court from that time until now.

The question seems, now, whether or not the New York, Pennsyivania & Ohio Railroad Company obtained title to these premises freed of the lien of this judgment. In other words, whether the sale in Summit county, under the Taylor and Dunphrey mortgage conveyed the property to the purchaser free of the lien of this judgment.

King, the plaintiff in this case, the owner of the judgment, was not made a party to the proceeding. He had a lien upon the premises at the commencement of the suit. It antedated the commencement of that suit about two months, and he ought, therefore, to have been made a party defendant, in that proceeding in order to make perfect title to the purchase. He, therefore, would not be bound by whatever was done in that case.

This would bring us then to the question whether or not either of the mortgages of Flag and Stedman or Taylor and Dunphrey covered this lot. So that they might, in a proper way and in a proper proceeding, sweep it from under the lien of this judgment. The Flag and Stedman mortgage was paid out of the proceeds of the sale in the case of Taylor and Dunphrey against the Atlantic and Great Western Railroad Company and others, when the sale was made in January, 1880. The

proceeds of the sale of the property, which the court found were covered by that of the mortgage, was largely in excess of that of the mortgage, and all the balance was applied upon the Taylor and Dunphrey mortgage, which was, as between the mortgages, a second lien.

Did the Flag and Stedman mortgage cover this lot? It will be remembered it was made years ago, in 1855, by the original Ohio company, and it recites in it the fact that the company was engaged then in constructing this railroad from Dayton, in the state of Ohio, to the state line, and the property that is conveyed by the mortgage is described in this wise:

" Do grant, bargain, sell, transfer and convey to the said Azariah C. Flag and Chas. I. Stedman, of the city of New York, and to their successors in the trust hereby created, all of the following, present, and in. the future to be acquired property and estate of said company, that is to say, their roadway, partially made and to be made between the points above stated," that is to say between Dayton and the state line in Trumbull county, including the right of way and lands occupied thereby together with superstructures and tracks thereon, or to be thereon, and all iron rails, ties used thereon, procured or to be procured therefor, and all bridges, viaducts, culverts, fences, depot grounds and buildings thereon, and all the appurtenances belonging thereto, engines, tenders, cars, tools, machinery, materials, contracts, subscriptions of stock, and all other personal property, rights thereto and interest therein, whether choses in action or in possession, and all franchises, rights and privileges of the said Atlantic and Great Western Railway Company."

That is the full description of the property that is conveyed by the mortgage. It does not convey the present and future to be acquired property generally, for it proceeds to particularly specify the property as a road made, partially made and to be made between these two points and all the future to be conveyed property, covered and conveyed by this mortgage, such as shall be placed upon or be immediately connected with it, as rights of way, depot grounds, rolling stock, etc., between the points named, Dayton, in Montgomery county, and the state line in Trumbull county. This was long before the lease of the Cleveland and Mahoning Railroad to this railroad company and has no reference to that lease; and the mortgage says on its face, that the road was only in process of construction; it was not a completed line, and was not yet being operated, and it was what thereafter might be put upon it or be immediately connected with it, that was connected with this mortgage.

In the deed of further assurance, which was made subsequently, there is just one thing added to this description, and that is thsi: " Also all the tolls, revenues, or incomes to be had or levied from said railroad or other property which may otherwise accrue to said comp any;" thus turning it into an income mortgage. And this is the only thing contained in either of these mortgages by way of description of property co vered or intended to be covered that can in any sense or in any manner be said to attach itself to the leasehold interest of the Cleveland and Mahoning Railroad Company, or to this lot in question.

Was this lot purchased out of the tolls, revenues, or income of the Atlantic and Great Western Railway Company of Ohio that executed the mortgage? Clearly it was not. That company had ceased to exist long before the purchase of the lot, and, with the others succeeding it, had become bankrupt and insolvent; its property had been sold and its rights, franchises and privileges transferred to such succeeding com-

panies. A reorganization is the surrender of the charter of the old company, and the issuance of a charter to the new, the reorganized company, and the old company ceases to exist for all purposes save the winding up of its affairs. It no longer has a corporate existence out of which it may earn an income, out of which it may earn any tolls or revenues. It is powerless to acquire any income after its charter is thus given up to the state. And that, we think, is the case here, and that this lot was purchased by another company and out of the income and revenues of that other company, and in no manner or form can it be said that the Flag and Stedman mortgages ever attached to and covered this lot.

Did the Taylor and Dunphrey mortgage cover the lot? That was a mortgage executed by the reorganized company, The Atlantic and Great Western Railroad Company, which was organized in pursuance of the proceedings under the said in the foreclosure of the Penn mortgage, and was executed after that company had acquired all the leasehold interest it had in the Cleveland and Mahoning Railroad, and it purports to cover not only the main line of the Atlantic and Great Western Railway Company from Dayton to Salamanca, but also its leased lines and all property appurtenant thereto, and connected therewith, so that it seems to cover the leasehold interest of the Atlantic and Great Western Railroad Company in the property and line of Cleveland and Mahoning Railroad Company; but at the time this mortgage was executed, this lot 359 was not owned by the Atlantic and Great Western Railroad Company; the purchase and deed was made of it thereafter, that is, in November, 1872, so that the Taylor and Dunphrey mortgage cannot cover the lot 359 unless its provisions cover after acquired property of the Atlantic and Great Western Railroad Company, in connection with its leasehold interest in the Cleveland and Mahoning Railroad.

This mortgage recites that the Atlantic and Great Western Railroad Company was possessed of a line of road from Dayton, Ohio, to Salamanca; a completed and equipped main line of road, and also certain leasehold interest in the Cleveland and Mahoning Railroad lines, specifying them. The description of the premises which it conveyed reads as follows:

" All right and title and interest which the said company, party of the first part, now has or may at any time hereafter acquire in or to its aforesaid railroad, extending as aforesaid, from Salamanca, in the state of New York, to the city of Dayton, in the state of Ohio, together with the said " Franklin Branch," so called, and the extension thereof and said demised premises in the Cleveland and Mahoning Railroad and all property embraced in the said lease, and said " Silver Creek Branch," all real estate, personal property, movable and immovable, rolling stock, rights of way, easements, income, tolls, advantages, tenements, hereditaments, and appurtenances to said property belonging, or in anywise appertaining; and all franchises, rights and privileges of the party of the first part to the premises."

Now, it will be noted that it does not purport to convey after-acquired property, but only after-acquired title to the railroad. " All the right, title and interest which the said company of the first part now has or may hereafter acquire in or to its aforesaid railroad." It goes upon the presumption that the title may be defective perhaps, or it may thereafter acquire some better title to its road or part of it, and so provides that the mortgage shall cover whatever title it then has or may

thereafter acquire to its road, and specifies nothing as to future acquired property, and there is nothing in this mortgage to show that it is to cover after-acquired property, except the fact that it is an income mortgage.

It may be said this lot was bought with the tolls and income, and therefore these mortgages have the right to follow it and subject it to the provisions of their mortgages, as all the property covered by the mortgage is entirely insufficient to pay off and discharge the indebtedness specified in it. Upon that point we have some doubt, but there is no claim made to us of that nature, and we need not pass upon it.

The proposition is whether or not the lot is covered by this mortgage in such words as that it might be sold by foreclosure of the mortgage itself. It was not a part of the itemized premises of the Cleveland and Mahoning Railroad Company, because the Cleveland and Mahoning Railroad Company never owned it. It was purchased by the lessee long after they obtained the lease, and purchased in fee.

In argument to the court, there was reference made to the terms and conditions of this lease, and the claim was made under the act of 1861. [See Secs. 3393, Rev. Stat. *et seq.*] But it is clear to our minds that it did; that the parties who were parties to the agreement of reorganization had no other intent or idea than that they were organizing a new company under the provisions of that act. The scheme of reorganization, provided in the act of 1861, contemplates the idea of the execution of just such mortgage as was executed by Taylor and Dunphrey and for the purpose referred to in that mortgage and we are satisfied that this was executed in furtherance of a reorganization scheme under that act.

We need not refer specially to the various instruments which are offered in evidence, and from which we deduce this fact. It is sufficient to say that we do not find as a fact that the Atlantic and Great Western Railroad Company was a reorganization of the old companies under the sale of the Penn mortgage and under and in pursuance of the said act of 1861.

Section 6 of that act [See Sec. 3398, Rev. Stat., 58 O. L. 70] provides: "The lien of the mortgages and deeds of trust authorized to be made by this act, shall be postponed to liens of judgments recovered against said corporation after its organization, for labor thereafter performed by it, or for material or supplies thereafter furnished to it, or for damages, for losses, or injuries thereafter suffered or sustained by the misconduct of its agents or in any action founded on its contract or liability as a common carrier thereafter made or incurred."

Here then, whatever mortgage or deed of trust may be made by the reorganized company, is made subject to the rights of parties who recover damages for injuries thereafter suffered, or sustained by the misconduct of the agents of the reorganized company, for such damages a party shall have a lien upon the road superior to such mortgage or deed of trust.

It appears that this claim of the plaintiff, King, grew out of injuries which he sustained by the agent and servants of the Atlantic and Great Western Railroad Company, and he claims his judgment is made a superior lien by Sec. 3398, Rev. Stat., to that of the mortgage; and it is, in our opinion, a superior lien upon this lot, to the lien of this mortgage. King not being a party to the foreclosure of this mortgage, he was in no sense or manner bound by that proceeding, and his lien could not, in any manner be affected thereby.

King v. Railroad Co.

The remaining question is, how may this lot be sold? Can it be sold separately, or must the entire railroad of this company be sold? Must it be treated as whole and sold as a whole?

Where a party acquires a lien upon a particular part of a continuous line of road, undoubtedly it is the law that he cannot subtract that particular part of the road from the whole and sell it, so that the road will not be divided by the sale of a strip out of it. The public has an interest in such road, and the state has an interest in its existence and its operation, and, therefore, when it is to be sold under legal proceedings, it must be sold as an entirety, so it may be preserved as an entirety and maintained for the public good.

Is this such a case? We have seen that this lot was purchased by the lessees of the Cleveland and Mahoning Railroad, as outside property, for the purpose of establishing a passenger station in the city of Youngstown, adjacent to the right of way of the said Cleveland and Mahoning Railroad. It owned this lot in full, but so far as the main line is concerned, it has a leasehold interest only; and upon that this plaintiff could acquire no lien and has acquired none by virtue of his judgment.

Under what principle we should be required to order the sale of that leasehold interest and this lot in connection with it, we are unable to say. They are two entirely independent and distinct things, and the sale of this lot would not, in any manner, interfere with the operation of the Cleveland and Mahoning railroad, because it may be operated continuously throughout its whole length without this building. The company may use other buildings for that perhaps, or it may acquire others for that purpose, or may use such as was used before it purchased this lot. But, at all events, here is a piece of property which is independent and aside from the Cleveland and Mahoning railroad, which the defendant owns in fee and which is not embraced in the demised terms of the Cleveland and Mahoning railroad, and therefore it does not come in our opinion, within the principle that where a party has a lien upon part of a railroad the road must be sold as an entirety. If the leasehold interest of the New York, Pennsylvania & Ohio Railroad Company in the line of the Cleveland and Mahoning Railroad Company should be sold, it would not convey this lot, because it is not embraced within the terms of the lease and does not belong to the Cleveland and Mahoning Railroad Company, so that it would have to be sold specially by a special description, and this shows us therefore that it should be sold separately in this case and a decree may be so entered.